IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICK J.,[1]

          Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Case No. 6:25-cv-00073-SB

**OPINION AND ORDER**

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Patrick J. ("Plaintiff") filed this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court reverses the

Commissioner's decision and remands for the calculation and payment of benefits.

///

///

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

# BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff filed a DIB application on September 27, 2021, alleging a disability onset date of November 1, 2018.[2] (Tr. 17.) In his application, Plaintiff alleged disability due to schizoaffective disorder. (*Id.* at 225.) The Commissioner denied Plaintiff's application initially on November 30, 2022, and upon reconsideration on September 1, 2023. (*Id.* at 17, 106-09, 118-21.)

On September 13, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 122-23.) Plaintiff and a vocational expert ("VE") testified at an administrative hearing on May 2, 2024. (*Id.* at 33-60.) On July 29, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 17-27.) On November 27, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of September 30, 2024 (Tr. 19) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before September 30, 2024, he is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's claim for benefits under the process described above. (Tr. 17-27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2018, the alleged onset date. (*Id.* at 19.) At step two, the ALJ found that Plaintiff suffered from the following severe medically determinable impairments: schizoaffective disorder with psychotic features and bipolar disorder. (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id*. at 20-21.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "medium work, . . . with performing only short, simple, routine, repetitive tasks in two-hour intervals; having only occasional, superficial interaction with the general public; occasional, direct interaction with co-workers providing it does not requires him to work in teams or in tandem; and occasional, direct interaction with supervisors" and "[h]e is limited to working in occupations that are not fast-paced assembly line and non-production rate, and he is best suited for working in an environment[] in which there is little changes in structure." (*Id.* at 21.)

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id*. at 25.) At step five, the ALJ found that, based on the VE's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including floor waxer medium, groundskeeper, and meat clerk. (*Id*. at 26.)

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons based on substantial evidence to discount his testimony. (Pl.'s Opening Br. ("Pl.'s Br.") at 1-14, ECF No. 12; Pl.'s Reply at 1-5, ECF No. 18.) For the reasons explained below, the Court agrees.

## I.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that the ALJ erred by discounting his subjective symptom testimony. (Pl.'s Br. at 7-12; Pl.'s Reply at 1-5.) Defendant responds that substantial evidence supported the ALJ's evaluation of Plaintiff's symptoms. (Def.'s Br. at 1-9, ECF No. 17.)

///

///

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 22.) The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163.

#### 1.    Plaintiff's Testimony

At the ALJ hearing, Plaintiff testified that he was thirty-eight years old and lived at home with his retired parents. (Tr. 37-38.) He earned a bachelor's degree in business and had a valid driver's license. (*Id.* at 39.) He had not worked since 2020, but had attempted to work at three different jobs following his alleged onset date and experienced panic attacks during training and abruptly left each job as the result of his paranoia. (*Id.*) Prior to his alleged onset date, he had worked as an account executive for a software company where he sold software products to doctors and was the most successful salesperson on his team. (*Id.* at 40-42.) Plaintiff testified that

a "nervous breakdown" ended his employment in 2018 as the result of his belief that his coworkers were plotting again him. (*Id.* at 43.)

Plaintiff testified that he could not work at any job because he was experiencing bedridden depression and his paranoia "gets really, really bad." (*Id.* at 44-45.) For example, he has a reoccurring belief that he is in the "Truman Show" and everyone around him is an actor and watching him. (*Id.* at 45.) He lives with that paranoia "100% of the time" and even out in public, such as at restaurants, he glances around to determine if someone is watching him. (*Id.*)

Plaintiff noted he has had five suicide attempts in the past but was no longer suicidal at the time of the hearing. (*Id.* at 46.) He experiences psychotic symptoms and even at the hearing he was glancing out the window to check the cars driving by. (*Id.*) He experiences paranoia to the point of panic attacks during which he runs around his house, and he recently took off all his clothes and ran outside. (*Id.* at 46-47.)

In response to the ALJ's question about any recent criminal behavior, Plaintiff testified that he recently became paranoid and tackled his dad and held him down based on a delusion that the singer "Billie Eilish was in charge." (*Id.* at 48.) The police tased and arrested Plaintiff and he spent time in jail banging his head against his cell door. (*Id.*) Prior to his alleged onset date, Plaintiff spent six months in jail for stealing a car during a manic episode, and spent time in prison and at a maximum security state hospital after a delusional episode during which he believed he was a preacher and swung a knife at someone. (*Id.* at 49.)

Plaintiff testified that he has tried several medications over the years and was currently taking Latuda, Lamictal, Cymbalta, and Xanax to manage his symptoms. (*Id.*) He previously tried Risperidone, but it increased his depression. (*Id.* at 49-50.) Plaintiff testified that stress is the primary trigger for his paranoia, as well as grief and he was "completely psychotic for six

months" following his recent divorce. (*Id.* at 50.) During that psychotic episode, he believed that his parents were trying to steal his dog and lock him up at a local psychiatric hospital. (*Id.*) Plaintiff testified that he was involuntarily hospitalized in the past, and was voluntarily hospitalized once since his alleged onset date following a psychotic panic attack. (*Id.* at 51.)

### 2.    The ALJ's Evaluation of Plaintiff's Testimony

The ALJ discounted Plaintiff's symptom testimony based on his "admissions of improvement in his symptoms with appropriate treatment, his limited compliance with prescribed and recommended therapies, and his reported regular activities" (*id.* at 25) and on the ground that Plaintiff's "mental status exams were mostly unremarkable except for variable moods." (*Id.* at 24.)

### 3.    Disposition

The Court finds that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record, to discount Plaintiff's testimony.

#### a.    Improvement with Treatment

Plaintiff argues that the ALJ erred by discounting his testimony based on his improvement when complying with appropriate treatment. (*See* Pl.'s Br. at 10-11.)

An ALJ may discount a claimant's testimony based on evidence that the claimant's symptoms improved with treatment or medication. *See Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (concluding that the ALJ had provided specific, clear, and convincing reasons for discounting the plaintiff's subjective symptom testimony where substantial evidence demonstrated that the plaintiff's pain improved with treatment and medication); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted). That rationale assumes that "[i]mpairments that can be controlled effectively with

medication are not disabling[.]" *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

However, the Ninth Circuit has consistently recognized that some individuals with severe mental impairments are unable to control their symptoms effectively with medication because their impairments impact their medication compliance. For example, in *Garrison*, the Ninth Circuit held that "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." 759 F.3d at 101 n.24 (further holding that the claimant's "occasional decisions to go 'off her meds' were at least in part a result of her underlying bipolar disorder and her other psychiatric issues") (citations omitted). Thus, the Ninth Circuit cautions not "to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Here, the ALJ discounted Plaintiff's testimony in part because Plaintiff acknowledged improvement in his symptoms with appropriate treatment but he was not always compliant with prescribed therapies. (Tr. 25.) As an initial matter, the record supports that Plaintiff found only limited success in controlling his symptoms with medication despite trying many different medications over the years:

- *See id.* at 395, "The patient has been on numerous medications. Most recently, the patient was treated with Effexor, Trileptal, and Risperdal. He reports feeling manic and delusional and believing that he was Jesus while he was taking these medications. Other medications he has taken in the past include Abilify, which he does not believe had any effect, Geodon (does not recall the effect), Depakote which worked until he started using illicit drugs, lithium which made him depressed, Zyprexa which did not

make him feel like 'myself,' and Lamictal, during which time he continued being delusional. The patient was also treated with Lexapro and Paxil and does not recall the effect of either of these medications."

- *Id.* at 476-78, on June 18, 2021, Plaintiff "report[ed] he's struggling with paranoia" and "he [wa]s currently in a depressed episode" and "report[ed] frequent insomnia due to worries, fidgetiness . . . despite being on 5mg Risperdal."

- *Id.* at 472, on August 16, 2021, Plaintiff was gaining weight on Risperdal, including gaining ten pounds in the last month, and reported that "Geodon did not help with delusions" and "Latuda . . . did not help with depression."

- *Id.* at 458, on February 2, 2022, despite taking Risperdal, Xanax, and Propranolol, Plaintiff was "getting overwhelmed easily" and "still having some paranoia."

- *Id.* at 736, on November 30, 2022, Plaintiff was "[o]n antipsychotics" but had "paranoia, agoraphobia and depression."

- *Id.* at 734-35, on December 1, 2022, Plaintiff had "uncontrolled symptoms and failed the [two] visits with new psychiatrist" and "request[ed] to raise the dose of [R]isperidone to 3 mg per night and to keep Xanax as well as Lamictal"; a "[l]engthy discussion was held regarding the nature and management and his paranoid obsessions" but "[h]e unfortunately has extremely strong belief of the dangers he is facing with no room of doubt" and "[h]e is in extreme anxiety and seems doing better on high dose Xanax."

- *Id.* at 735, also on December 1, 2022, Plaintiff "said he has tried almost every atypical antipsychotic[] including Seroquel, Geodone, Abilify, Latuda and only

[R]isperidone is doing a little better" and "Hydroxyzie did not work and he has quit [P]ropranolol."

- *Id.* at 749, at his January 12, 2023 psychiatric diagnostic evaluation, Plaintiff "became agitated" and "he ran out of the room crying [and] could be heard sobbing [and] screaming in the next room," reported "paranoid delusions," and was diagnosed with "acute agitation," psychosis, mania, depression, and anxiety.

- *Id.* at 745, also at his January 12, 2023, psychiatric diagnostic evaluation, Plaintiff reported that he switched providers and is "still psychotic" despite being "currently on 3mg of [R]isperidone."

- *Id.* at 890, on September 15, 2023, Plaintiff reported that he "struggle[s] with paranoid depression every day" and has "thoughts that groups of people are after me[,]" including "people I don't know that seem to know me especially sometimes feels people in the grocery store are actors" and rating his depression and anxiety as eight out of ten and paranoid ideation as seven earlier in the day, all while taking Risperidone, Lamictal, Cymbalta, and Xanax, and noting he has previously tried Abilify, Geodone, Vraylar, lithium, Effexor, Risperidone, Zyprexa, Abilify, Depakote, Lamictal, Seroquel, Latuda, Risperidone, Gabapentin, Prozac, Lexapro, and Propranolol.

- *Id.* at 897-98, on October 20, 2023, Plaintiff reported he "has been mostly in bed because [of] depression" and he thinks "people are after me" and he "just want[s] to not have paranoid thoughts" and had "[four] periods [during the prior month] when [he] thought people were after [him]" despite taking several medications.

- *Id.* at 903, on December 14, 2023, Plaintiff reported waking up at 3:30am and knocking on his parents' door in a panic attack that people were after him and he felt like filming was going on in the Truman Show and he reported being "extremely depressed" and "l[]ying in bed all the time" but he could not "watch tv because of paranoia and feels like things are directed at me on tv."

- *Id.* at 916-21, on February 22, 2024, Plaintiff reported he "has been really depressed" and the provider "pointed out to patient that he was on high or above recommended doses for many of his mediations" and "warned patient that being on high dose of Cymbalta was not a good idea given his diagnosis of schizoaffective disorder, bipolar type as likely to destabilize his mood like it seems to have done since last appointment after increasing" dose and "patient wants to taper off [R]isperidone while starting Latuda because states his depression is much worse."

In light of this longitudinal record, the Court finds that the record lacks substantial evidence that Plaintiff experienced any sustained improvement with medication during the relevant period, even when he was compliant with taking his medications. The ALJ therefore erred by finding that Plaintiff's "bipolar and schizoaffective disorders have significantly improved since prior to November 2018 on medications[.]" (*Id.* at 24.)

The record further supports that Plaintiff was not always fully compliant with his medications in large part as the result of his mental impairments:

- *See id.* at 468, on September 28, 2021, Plaintiff was "feeling energetic but he has been l[]ying in bed over three days" and "has stopped lithium" because "he is worried about his kidney health."

PAGE 12 – OPINION AND ORDER

- *Id.* at 464, on November 24, 2021, Plaintiff "ha[d] stopped taking Vraylar and [was] having paranoia," reporting that "he sometimes feels that others are watching him and following him" and he "reports he is having persistent paranoia but does not want to take antipsychotics at this time."

- *Id.* at 462, on January 5, 2022, Plaintiff was "experiencing psychosis at this time" and was "recording this conversation with his phone and [wa]s delusional" and "he reports he has been contacted by various government agencies and has been in contact with Demi Lovato" and "refuses to take medications and is unwilling to go to the hospital."

- *Id.* at 734-35, on December 1, 2022, Plaintiff "said he has tried almost every atypical antipsychotic[] including Seroquel, Geodone, Abilify, Latuda and only risperidone is doing a little better" and he "has been resistant to the idea of trying new medicines" and does not "want to try Invega as it suppresses prolactin making man's breast grow bigger" and "Hydroxyzie did not work and he has quit propranolol."

- *Id.* at 745, on January 12, 2023, Plaintiff reported that he "stopped trusting" his prior psychiatrist because of "paranoia" and therefore switched providers.

- *Id.* at 904-907, on December 14, 2023, Plaintiff's provider noted that "patient refuses to leave the house so can't get lab draws" and he did not want to try several other medications because they were ineffective in the past.

In light of this record, the Court finds that there are compelling reasons to view Plaintiff's departures from trying new or taking prescribed medication as a function of Plaintiff's mental impairments. *See, e.g.*, *Alfredo C. v. Saul*, No. 6:18-cv-1460, 2020 WL 836833, at *5 (D. Or. Feb. 20, 2020) (holding that the ALJ erred in discounting the paranoid schizophrenic claimant's

symptoms where the claimant's "doctors tried to treat his psychiatric needs with an array of

medications: Adderall, Ritalin, Risperdal, loxapine, Wellbutrin, clonazepam (Klonopin),

lamotrigine (Lamictal), Abilify, and quetiapine (Seroquel)" and noting that "the Ninth Circuit

has cautioned that 'it is a questionable practice to chastise one with a mental impairment for the

exercise of poor judgment in seeking rehabilitation' 'because mental illness is notoriously

underreported'" (quoting *Regennitter v. Comm'r of Soc. Sec. Admin*, 166 F.3d 1294, 1299-300

(9th Cir. 1999))). Accordingly, the Court finds that the ALJ erred by discounting Plaintiff's

testimony based on medication noncompliance.[3]

     For these reasons, the Court finds that the ALJ failed to cite clear and convincing reasons,

supported by substantial evidence, to discount Plaintiff's symptom testimony due to his

improvement with appropriate medication and limited compliance.

### b.    Activities of Daily Living

     Plaintiff argues that the ALJ erred by discounting Plaintiff's symptom testimony as

inconsistent with his activities of daily living. (*See* Pl.'s Br. at 11-12.)

     An ALJ may discount a claimant's symptom testimony based on activities that are

incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell*

*v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a

claimant's testimony and the claimant's reported activities provide a valid reason for an adverse

credibility determination" (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)));

*Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [the claimant's]

---

[3] Plaintiff is correct that the ALJ also erred by not expressly considering the possible reasons for Plaintiff's medication noncompliance. *See Hornsby v. Bisignano*, No. 24-5422, 2025 WL 3187355, at *2 (9th Cir. Nov. 14, 2025) ("The ALJ's approach also diverged from the Social Security Administration's guidance, which provides that the agency will not use a claimant's failure to seek treatment to establish inconsistency without considering the possible reasons for that failure." (citing SSR 16-3p, 82 Fed. Reg. 49462, 49466-67 (Oct. 25, 2017))).

credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))). Notably, there must be a meaningful inconsistency between the claimant's daily activities and the symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the plaintiff's symptom testimony and explaining that the plaintiff's "limited daily activities were not meaningfully inconsistent with her symptom testimony") (citation omitted).

The ALJ discounted Plaintiff's testimony in part based on Plaintiff's activities of daily living, citing that Plaintiff could prepare sandwiches and frozen food, wash dishes, do laundry and light cleaning, drive a car, go out alone sometimes, shop in stores, read on the computer, count change, and spend time with others in person, on the phone, and by email and texting. (Tr. 24, also acknowledging that Plaintiff required reminders to take his medications and to take a bath, shower, and eat; had trouble getting along with others due to his "acute social phobia"; was very paranoid about other people and did not go anywhere; could only pay attention for ten minutes and did not finish what he started; had difficulty concentrating on written instructions and did not follow spoken instructions well; and handled stress and changes in routine poorly). However, the ALJ did not explain how any of these limited basic daily activities were incompatible with Plaintiff's testimony regarding the persistent severity of his paranoid schizophrenia and bipolar disorder.

Further, Plaintiff's only activity that is arguably inconsistent with his testimony is his ability occasionally to leave his home and spend time with others, but those occasional forays into the world do not contradict his testimony about his struggles to perform those basic limited activities nor the extreme episodes during which he cannot leave his home for days. Accordingly,

the Court finds that the ALJ erred by discounting Plaintiff's testimony based on his activities of daily living. *See Nicole N.-M. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1035-36 (D. Or. 2022) (holding that the ALJ erred in discounting the paranoid schizophrenic claimant's symptom testimony based on inconsistency with activities of daily living where "the majority of the activities in which Plaintiff engaged—performing adequate self-care, preparing simple meals, driving a car, paying her bills, handling her finances, performing household chores, and going grocery-shopping—are limited basic daily activities that are legally insufficient to support the ALJ's conclusion" where "Plaintiff report[ed] struggling to perform these activities," "[d]uring extreme episodes [Plaintiff] will not leave house," and "during an episode, she needs reminders to take care of basic hygiene") (citation omitted); *Alfredo C.*, 2020 WL 836833, at *6 (holding that the ALJ erred in discounting the paranoid schizophrenic claimant's symptoms based on his reported daily activities where "[t]he ALJ identified Plaintiff's ability to 'perform adequate self-care, prepare simple meals, do household chores and go out to the store,' as well as his ability to go swimming, as daily activities inconsistent with Plaintiff's symptom testimony" but "[t]he ALJ overstated the relevance of these daily activities to Plaintiff's ability to work" where "the ability to perform adequate self-care and do household chores is the kind of routine activity that is insufficient to justify discounting Plaintiff's symptom testimony[,]" "the ability to 'prepare simple meals' apparently refers to nothing more than Plaintiff's capacity to microwave frozen food," and "Plaintiff's ability to swim is not relevant to his capacity to work, particularly as a janitor, the job the ALJ found Plaintiff was able to perform").

### c. Medical Evidence

The ALJ also discounted Plaintiff's symptom testimony on the ground that Plaintiff's "mental status exams were mostly unremarkable except for variable moods." (Tr. 24.)

An ALJ may discount a claimant's symptom testimony based on objective medical evidence in the record. *See Young v. Saul*, 845 F. App'x 518, 520 (9th Cir. 2021) ("An ALJ may consider inconsistency between a claimant's symptom testimony and the objective medical evidence in the record in determining whether to discount the claimant's symptom testimony." (first citing 20 C.F.R. § 404.1529(c)(1)-(2); and then citing *Molina*, 674 F.3d at 1113)); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) ("[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" (citing *Burch*, 400 F.3d at 680)); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming the ALJ's discounting of the claimant's testimony, in part, because it conflicted with the objective medical evidence).

Based on the medical records summarized above, the Court finds that there is not substantial evidence in the record to support the ALJ's reasoning that "unremarkable" mental status exams called Plaintiff's symptom testimony into question. Rather, the record clearly supports that Plaintiff frequently presented with altered mental status exams. (*See, e.g.*, Tr. 749, noting that at a January 12, 2023, visit, Plaintiff was "agitated" and "ran out of the room crying and could be heard sobbing and screaming in the next room" and presented with "paranoid delusions"). Further, even when Plaintiff's mental status exams were relatively normal, he continued to report suffering from paranoid delusions, depression, and anxiety. (*See, e.g.*, *id.* at 906, noting Plaintiff's normal mental status exam, including congruent affect, fair eye contact, alert orientation, normal speech, local thought processes, and intact memory and attention, but also reported that Plaintiff was suffering from "paralyzing depression" and waking up with panic attacks because he was "fearful of people after him"). The Court finds that the ALJ erred by discounting Plaintiff's testimony based on his mental status exams. *See, e.g.*, *Terry B. v. Comm'r*

*of Soc. Sec. Admin.*, No. 6:21-cv-01438-JR, 2022 WL 17667221, at *6 (D. Or. Dec. 14, 2022) (holding that the ALJ erred by discounting the paranoid schizophrenic's symptoms as inconsistent with his medical records based on routine examinations where the claimant was "alert," "pleasant," and "in no acute distress" during mental status exams but "viewed as a whole, the record lacks substantial evidence to support the ALJ's finding that plaintiff's subjective symptom testimony is contradicted by his medical records").

For all of these reasons, the Court finds that the ALJ committed harmful error in discounting Plaintiff's symptom testimony.

## II.    REMEDY

Plaintiff asks the Court to remand for an award of benefits. (Pl.'s Br. at 10-14; Pl.'s Reply at 5.) The Commissioner responds that "there are many reasons that cast doubt as to whether Plaintiff was disabled[,]" citing the "unchallenged prior administrative medical findings." (Def.'s Br. at 8.)

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as

true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.     Analysis

The Court concludes that the credit-as-true standard is satisfied here and remand for the payment of benefits is appropriate.

The Court concluded above that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's testimony. The record has been fully developed, including treatment notes spanning the relevant time period and Plaintiff's testimony about the severity and effects of his impairments. The Court finds that further proceedings would serve no useful purpose here.

Further, if Plaintiff's testimony is credited as true, the record reflects that Plaintiff is disabled. The ALJ's first hypothetical, on which he relied in finding Plaintiff not disabled, limited Plaintiff to "occasionally have superficial interaction with the general public, occasional direct interaction with coworkers[,] . . . and occasional direct interaction with supervisors." (Tr. 55.) However, in the ALJ's second hypothetical, which is more consistent with Plaintiff's testimony, he limited Plaintiff to occasional superficial interaction with the general public, coworkers, *and* supervisors and noted Plaintiff would routinely miss more than one day of work per month, and the VE testified that "[e]ach of these items, independent of the other, would preclude employment." (*Id.* at 58.) The VE explained that "the fact that a person can only have occasional superficial interactions with supervisors alone would preclude . . . competitive employment" because "[a] person needs to be able to communicate with their supervisor when needed, at any time." (*Id.*, "[Y]ou need to be able to say more than good morning. . . . You need to be . . . able to take feedback, and you need to be able to receive instructions about what to do

and how to do things and where to do that and where to go, and you need to be able to communicate more than superficially with the supervisor."). The VE added that "my threshold for someone being absent is one day per month" and "[m]ore than that, the person is no longer competitively employable." (*Id.* at 59.) As a result of the VE's testimony, the ALJ would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1022 n.28 (explaining "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true"); *Alfredo C.*, 2020 WL 836833, at *8 ("If credited as true, Plaintiff's subjective symptom testimony establishes that Plaintiff is disabled, because he describes severe symptoms of psychiatric illness that prevent him from getting to work regularly, working under supervision, and remaining in the workplace for a full day on a regular, continuous basis.").

Finally, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. On the contrary, the record supports that Plaintiff has suffered from schizoaffective disorder with psychotic features and bipolar disorder since well before his alleged onset date, and his debilitating symptoms of paranoid delusions and paralyzing depression and anxiety persisted throughout the relevant period despite taking a wide range of anti-psychotic, anti-depressant, and anti-anxiety medications.

For all of these reasons, the Court remands this case for the calculation and payment of benefits. *See, e.g.*, *Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government argues that we should remand for further proceedings rather than remand for an award of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the

Government with an unfair second opportunity to present its case. . . . We therefore remand to the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 6th day of March, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge